RENDERED: NOVEMBER 26, 2008
TO BE PUBLISHED

FINAL

𝖒upreme 𝕮ourt of 𝕶entucky

2007-SC-000328-DG

DATE 12-17-08 EvAGraum,DC

BRIAN STRANGE                                              APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.              CASE NO. 2006-CA-000741-MR
FAYETTE CIRCUIT COURT NO. 05-CR-00815

COMMONWEALTH OF KENTUCKY                                    APPELLEE

**OPINION OF THE COURT BY JUSTICE VENTERS**

**REVERSING AND REMANDING**

Appellant, Brian Colby Strange, entered a conditional guilty plea to one count of possession of a controlled substance, first-degree and one count of possession of a prescription controlled substance in an improper container. He was sentenced to terms of imprisonment of five years and twelve months, respectively, to be probated for five years. In so pleading, Appellant preserved his right to appeal the ruling of the Fayette Circuit Court which overruled his motion to suppress evidence obtained during a pat down search of his person. The Court of Appeals affirmed the trial court's decision. We now reverse the decision of the Court of Appeals.

Our review of a motion to suppress is conducted *de novo* to determine whether the decisions of the trial court and the Court of Appeals are correct as a matter of law, but we defer to the trial court's findings of fact to the extent

they are supported by substantial evidence. Commonwealth v. Welch, 149 S.W.3d 407, 409-410 (Ky. 2004); Commonwealth v. Whitmore, 92 S.W.3d 76, 79 (Ky. 2002). Factual findings are reviewed under a "clearly erroneous" standard. Tucker v. Commonwealth, 199 S.W.3d 754, 756 (Ky. App. 2006).

## RELEVANT FACTS

On the evening of April 11, 2005, Officers Hall and Olivares patrolled in separate police cruisers an area of Lexington known to police for prostitution and illegal drug activity. A few minutes after 11:00 pm, the two officers, traveling one behind the other at the corner of Etawah and Augusta Drive, saw a van parked a few feet from a payphone. Standing between the phone and the van was Appellant. Both officers testified that they routinely stopped to question everyone out at that time of night in that neighborhood.

Therefore, they immediately turned around and returned to find Appellant standing beside the van, conversing with the driver. Officer Hall approached and immediately directed him to move away from the van. Officer Hall testified, "We [Hall and Olivares] separated them," and "I moved him [Appellant]" from beside the van to beside the police cruiser, which was parked a few yards away. Officer Olivares approached the driver of the van to speak with him. Once away from the van, Officer Hall noted that Appellant seemed nervous. He asked Appellant for his name and what he was doing in that area. Appellant replied that he was visiting a family friend who had been in the hospital. Officer Hall noticed a bulge in Appellant's pants pocket. Concerned that it may be a weapon, Officer Hall conducted a protective pat down of Appellant's clothing. Satisfied that the bulge was not a weapon, Officer Hall

2

asked Appellant to identify the object in his pocket. Appellant said he did not know what the object was. Officer Hall received permission from Appellant to remove the object, which turned out to be an unmarked prescription bottle containing twelve Oxycontin and five Xanex pills. Officer Hall then formally placed Appellant under arrest. The driver of the van was not charged.

Appellant moved to suppress the evidence taken from his pocket, on the grounds that he had been stopped and frisked by the police without sufficient cause. The trial court conducted an evidentiary hearing pursuant to RCr 9.78. The only evidence presented at the hearing was the testimony of Officers Hall and Olivares.

Immediately following the presentation of evidence, the trial judge made two findings of fact which he concluded justified the detention of Appellant and the pat down which led to the discovery of the drugs. Those facts are that Appellant was in a neighborhood known for criminal activity late at night and what the trial court referred to as Appellant's "initial reaction" to the arrival of the police vehicles. The trial judge did not describe that "initial reaction" in any detail, but it is obvious that the judge adopted as his finding the descriptions of Appellant's behavior provided by the two officers. That is, Appellant's movement from his position between the payphone and the van, to the driver side window of the van as the police passed by.

The proper legal standard to analyze the detention of Appellant by the police is whether from the totality of circumstances then apparent to the officers, whether there was articulable reasonable suspicion that either Appellant or the van driver had been or were about to be involved in criminal

3

conduct.  U.S. v. Cortez, 449 U.S. 411 (1981).  Using this appropriate standard, the trial court concluded that such suspicion existed and overruled the motion to suppress.  The Court of Appeals affirmed the trial court's ruling, and in doing so, added the following facts as relevant considerations: that Appellant acted nervous during his conversation with Officer Hall; that Appellant's reason for being in the neighborhood differed from the reason given by the driver of the van, and that Appellant's movement toward the van upon seeing the police was done "evasively."

Having carefully reviewed the evidence presented at the hearing, and the trial court's oral findings of fact, we conclude that the overruling of the motion to suppress must be reversed.  We find that one of the two facts cited by the trial court is not supported by substantial evidence and as a matter of law, the other fact standing alone is insufficient to constitute articulable reasonable suspicion.

## ANALYSIS

Since the decision in Terry v. Ohio, 392 U.S. 1 (1968), it has been well established that the brief detention of a person by a police officer may constitute a seizure within the meaning of the Fourth Amendment of the United States Constitution, and as such may properly be undertaken only if the police officer has a reasonable suspicion based upon objective, articulable facts that criminal activity is afoot.  See Henson v. Commonwealth, 245 S.W.3d 745 (Ky. 2008); Fletcher v. Commonwealth, 182 S.W.3d 556 (Ky. App. 2005); Docksteader v. Commonwealth, 802 S.W.2d 149, 150 (Ky. App. 1991).  We have recognized however, that not every interaction on the streets between a

police officer and a private citizen rises to the level of an investigatory stop with all of its Constitutional ramifications. We held in Commonwealth v. Banks, 68 S.W.3d 347, 350 (Ky. 2001), that "[p]olice officers are free to approach anyone in public areas for any reason," and that "[o]fficers are entitled to the same freedom of movement that the rest of society enjoys." Id. No "Terry" stop occurs when police officers engage a person on the street in conversation by asking questions. Florida v. Royer, 460 U.S. 491 (1983). Thus, the decision of the officers to approach and engage Appellant and the van driver cannot be challenged.

However, the nature of the encounter between the Appellant and the officers changed at the moment Officer Hall directed Appellant to move away from the van and over to the police cruiser. At that point, Officer Hall exercised substantial control over Appellant's person, and limited Appellant's freedom of movement.

The Commonwealth argues that the officers merely asked Appellant to walk away from the van, and that such a request cannot constitute a seizure. The testimony, however, reveals otherwise, and it is clear that the trial court recognized that moment as the point at which the seizure of Appellant occurred. Officer Hall's assertion that "we separated them" and that "I moved him [Appellant]" away from the van established beyond dispute that he took control of Appellant and expected compliance.

When police officers, by means of physical force or show of authority, in some way restrain the liberty of a citizen, a "seizure" of that person has occurred. The United States Supreme Court in United States v. Mendenhall,

5

446 U.S. 544 (1980), and this Court in <u>Baker v. Commonwealth</u>, 5 S.W. 3d 142 (Ky. 1999), held that a person has been seized in the constitutional sense when, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. <u>See also</u> <u>Henson</u>, 245 S.W.3d at 747. A reasonable person, in a high crime neighborhood late in the evening, would not and should not reasonably feel free to resist a police officer's order to move. Citizens are encouraged to comply with reasonable police directives, and the police should be permitted to expect reasonable compliance with reasonable demands. Appellant was directed to move over to the police cruiser, and he apparently did so promptly and peacefully. His passive compliance with the policeman's order cannot convert that order into a request which Appellant, or any citizen, should feel free to resist.

Having determined that Appellant was seized for Fourth Amendment purposes, we must decide whether the officers had an articulable reasonable suspicion that criminal activity was afoot based upon the facts in existence at that time. The only facts articulated by Officers Hall and Olivares as existing prior to the seizure are those cited by the trial judge at the conclusion of the hearing. Appellant was in a public area known for criminal activity, late at night, standing near a pay phone that has sometimes been used in drug transactions, and when he saw the officers, he walked quickly to the van parked a few steps away. Additional factors cited by the Court of Appeals – his apparent nervousness, that he and the van driver gave differing reasons for being there, and the bulge in the pants – did not become known until after the

6

seizure and cannot therefore be factors articulated to justify the reasonableness of the seizure.

The trial court's finding that Appellant's "initial reaction" to the police presence was suspicious is not supported by substantial evidence. Nor does the evidence support the Court of Appeals' conclusion that Appellant had "evasively turned". The record indicates that the van was no more than a few steps from the phone. Officer Hall testified that when he first saw Appellant, he was walking toward the van. Later in his testimony, Officer Hall stated three times that he first saw Appellant standing between the van and the phone a few feet away. By the time he and Officer Olivares returned, Appellant was standing beside the van's driver side window. Officer Hall never said that he saw Appellant turn, and he never described Appellant's movement as "evasive." Officer Olivares added only that when he first saw him, Appellant was "standing" between the van and the payphone, and that as the officers passed by, Appellant "walked real quickly" toward the driver side of the van, where he was standing when they returned a few moments later. The officers articulated nothing about Appellant's movement to explain why it seemed suspicious, beyond the general suspicion they have for everyone out at that time of night in that neighborhood. The movement described by the officers did not indicate that Appellant intended to hide or to conceal his appearance. It did not suggest an effort to run away or to elude the police. It did not indicate any reason to suspect that evidence or contraband was being carried, discarded, or hidden. The officers gave no explanation of Appellant's movement to distinguish it from any other action he might have made, sinister or innocent.

7

Without the articulation of facts showing how the movement was suspicious, or, as the Court of Appeals termed it, "evasive," the Terry requirement is not satisfied. See Joshua v. DeWitt, 341 F.3d 430, 443-444 (6th Cir. 2003) (concluding that simply characterizing conduct of a suspect as a "furtive gesture" was mere opinion, insufficient to justify a Terry stop without specific, articulable facts in the record to explain it). Likewise, we must conclude that the lack of evidence in the record to support a finding that Appellant's movement was suspicious renders that movement unavailable as a factor to support Appellant's seizure. We recognize that police officers have training and experience that may enable them at times to see suspicious behavior that goes unnoticed to the untrained eye. That training and experience, however, should enable them to articulate the factors that aroused their suspicion. That has simply not been done here.

Without conduct that can truly be deemed suspicious, the only factor from which reasonable suspicion is articulated here is Appellant's presence in a high crime area at night. That mere presence alone is not sufficient evidence to justify an investigatory stop and seizure. Illinois v. Wardlow, 528 U.S. 119 (2000). The officers acknowledged that in that area they stop and talk to everyone they see out at that time of night. Doing so may be a good police practice, and as stated above, they are free to do so. See Banks, 68 S.W.3d at 350. Undoubtedly, that involvement with citizens deters some from committing crimes and it surely on occasion enables the police to obtain information helpful in the law enforcement effort. But, when the police take control over a citizen's person, and limit the movement of that citizen, as they did with

8

Appellant, the Fourth Amendment is involved and they must be able to articulate the grounds for their suspicion.

## CONCLUSION

Because the seizure of Appellant was not based on articulable reasonable suspicion and it transgressed Appellant's rights under the Fourth Amendment, the subsequent pat down and recovery of the prescription medications was improper and the evidence so derived should have been suppressed, notwithstanding Appellant's consent to the search of his pocket. Such an unwarranted detention or seizure tainted the subsequent consent obtained for searching his pocket, rendering inadmissible the evidence thereby obtained. Royer, 460 U.S. 491; See also Matheney v. Commonwealth, 191 S.W.3d 599 (Ky. 2006) and Henson, 245 S.W.3d at 751. We reverse the Court of Appeals decision and remand this case for further proceedings consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:
V. Gene Lewter
Department Of Public Advocacy
100 Fair Oaks Lane
Frankfort, KY 40601

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General
Room 118, Capitol Building
Frankfort, KY 40601

Michael Louis Harned
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, KY 40601-8204