**Michael NEAL III, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

NO. 2013–CA–001628–DG

Court of Appeals of Kentucky.

RENDERED: OCTOBER 31, 2014; 10:00 A.M.

BRIEF FOR APPELLANT: Larry D. Ashlock, Elizabethtown, Kentucky

BRIEF FOR APPELLEE: Mark Shouse, Assistant Hardin County Attorney, Special Assistant General, Elizabethtown, Kentucky

BEFORE: DIXON, LAMBERT, AND TAYLOR, JUDGES.

## OPINION

LAMBERT, JUDGE:

This matter is on discretionary review from the August 22, 2013, order of the Hardin Circuit Court affirming the Hardin District Court's judgment of conviction entered pursuant to a conditional guilty plea. The issue before the circuit court and this Court is whether the district court properly denied the defendant's motion to suppress. Having carefully reviewed the record and the parties' arguments, we affirm.

During the early afternoon of December 24, 2012, Michael E. Neal III was stopped by Officer Chris Smith of the Radcliff Police Department after he had been speed-

ing in his 1998 Honda near the intersection of Shelton Road and Poppy Court. Neal had parked his vehicle, exited it, and walked away from it when Officer Smith made contact with him. They walked back to Neal's vehicle, where a clear, torn plastic bag was visible inside. Officer Smith gained consent to search and located a pipe with a burnt screen used to smoke marijuana. Neal was charged with not having an operator's license and for possession of drug paraphernalia. The case was assigned number 12–M–2500, and a court date was set for January 9, 2013.

Neal filed a motion to suppress the drug paraphernalia—the pipe—that had been seized from his vehicle. He explained that he had not been pulled over for speeding but that he had parked his vehicle and began walking down the street when he was stopped by Officer Smith. Officer Smith detained him and walked him back to his vehicle. Officer Smith saw a torn plastic bag inside of the vehicle, but there was no indication of where in the vehicle he saw the bag or how that impacted the officer's reasonable suspicion. This seizure led to the finding of the pipe inside of the vehicle and the possession of drug paraphernalia charge. Neal argued that the warrantless search was conducted in the absence of exigent circumstances, that the property seized (the pipe) was not in plain view, that the search violated his reasonable expectation of privacy, that there was no probable cause, that the search was not conducted incident to his arrest, and that there was insufficient information to justify the officer's decision to detain him.

The district court held a hearing on Neal's motion to suppress on April 12, 2013. The first witness to testify was Officer Smith. He testified that he came into contact with Neal in the early afternoon hours of December 24, 2012, when he was driving westbound on Shelton Road. He saw a dark colored Honda Civic approaching, and he clocked the vehicle at 44 mph in a 35 mph zone. He became suspicious of the vehicle when it passed him; the three people in the car all turned around to look at him as he drove past. In addition, the vehicle matched the description of one used in two robberies that had happened earlier in the week. That vehicle was described as an older model, dark colored Honda Civic with a burned out taillight. Officer Smith radioed another unit to come to his assistance. While Officer Smith was turning around, the vehicle turned onto another road and dropped off one of the passengers at an address on Clover Court. The officer continued to observe the vehicle until the other unit was closer. The vehicle exited off of Clover Court and began going eastbound on Shelton Road. It then turned onto Hurstfield Drive. Officer Smith looked for the vehicle on Hurstfield Drive, but was unable to find it again.

As he was returning to Shelton Road, Officer Smith saw two individuals peeking from behind a building on Stockton Court. He saw them walk from behind a building onto Stockton towards Hurstfield. He recognized the individuals from the vehicle, but he did not see the vehicle nearby. Officer Smith made contact with the two individuals, intending to investigate the robbery, and he stated that he was very familiar with one of the individuals, Chance Fairman. Mr. Fairman kept putting his hands in his pockets, and he had been known to carry a firearm. Officer Smith asked them where they parked the vehicle and for their identification. Neal presented an ID card, not an operator's license; Neal told Officer Smith that he did not have an operator's license. They told him that the vehicle was parked two buildings away in a parking lot.

Officer Smith asked Neal and Mr. Fairman to walk back to the vehicle with him, which they did, where another officer, Lt. McCloud, was already on the scene. Officer Smith wanted to determine whether the vehicle had a broken taillight like the vehicle that had been used in the robberies. Both subjects were very nervous, and Officer Smith continued to talk with them. He asked for consent to search them because of how nervous Mr. Fairman was. They both gave consent to search their person, and they both had quantities of cash in their pockets. Lt. McCloud looked in the vehicle and observed a torn baggie consistent with marijuana use in the front passenger compartment. Officer Smith also received consent to search the vehicle. While he was searching the vehicle, the officers checked the taillight and determined that it was working and functional. Therefore, it did not match the vehicle used in the robbery. During the search, Officer Smith found a black pipe with a screen on it consistent with marijuana use under the driver's seat. Upon questioning, Neal said that it was used for marijuana. They also found tobacco and several packs of cigarillos that had been broken down inside of the vehicle.

On cross-examination, Officer Smith stated that four to five minutes had elapsed from the time he clocked the vehicle and the time he stopped Neal and Mr. Fairman. He did not stop the vehicle for speeding, but rather he called for backup because he thought the vehicle had been involved in the robbery and the stop would be high-risk. He had not been able to see whether the rear taillights were working. He told Neal and Mr. Fairman to stop while he (Officer Smith) was in his vehicle and also told Mr. Fairman to take his hands out of his pockets. Officer Smith immediately went to their location after he stopped his car. Once Mr. Fairman removed his hands from his pockets, he no longer feared for his safety.

Officer Smith walked the individuals back to the vehicle because he had probable cause to stop them for speeding, but he opted not to cite Neal for this. Officer Smith wanted to follow up on whether Neal was a suspect in the robbery. He began questioning them about why there were nervous and why they left the vehicle. Officer Smith was suspicious about why Neal and Mr. Fairman wanted to get away from the vehicle. Neal told him he was not supposed to be driving. Officer Smith reiterated that Lt. McCloud found a torn baggie on the floorboard of the driver's side of the vehicle. There was no marijuana in the torn baggie, but this was consistent with what drugs are normally carried in. Officer Smith stated that Neal gave him consent to search and gave him the keys to the vehicle. Neal told him that the vehicle belonged to his father, which Officer Smith confirmed. Officer Smith did not have the pipe tested, but he could smell the odor of marijuana from the burnt particles in the pipe. Neal said the pipe was used to smoke marijuana, but he did not say that he had done so.

Officer Smith opted to not charge Neal with speeding or possession of marijuana because Neal was being cooperative. The officer clarified that the bulb in the taillight of the vehicle used in the robberies was burned out, but the taillight itself was not broken. Officer Smith stated that he would need to have access to the interior of the car to determine whether the taillights were operational.

Neal was the next witness to testify. He stated that he and another friend, Mr. Fairman, were on the way to drop off a person they did not know on Clover Court. While driving on Shelton, Neal saw the officer before he turned onto to Clover Court. After dropping the person off, he

turned onto Stockton from Hurstfield and parked the vehicle. He and Mr. Fairman got out of the vehicle and began walking. He saw the police vehicle pass him on Hurstfield and turn around. He stopped walking when the officer asked him to do so, and Officer Smith told Mr. Fairman to keep his hands out of his pocket. He told Officer Smith that he was "just walking." They all returned to his vehicle; he said he felt like he had no choice but to return to it with Officer Smith.

Once they reached the vehicle, Officer Smith spoke with them briefly and asked Neal about his not having a driver's license, who owned vehicle, and the reason the window was broken in his car. Officer Smith asked if he could search them when Mr. Fairman continued to put his hands into his pockets. They gave him consent to search their persons. He patted them down and took money out of their pocket. The other officer looked into the car and saw a baggie. The officers did not ask for consent to search, but just started searching the vehicle. He did not give them consent to search the vehicle. One officer opened the trunk and searched it while the other officer picked up the baggie and put it on the seat. That officer also told them that he found a stem and put that on the seat as well. Officer Smith found a pipe and asked Neal if he smoked marijuana out of it. Neal denied that he smoked marijuana. Mr. Fairman claimed that the pipe belonged to him. Officer Smith went back to his vehicle and wrote the citation.

On cross-examination, Neal stated the officers took the keys from him and that the passenger door lock was broken. He stopped the vehicle on Stockton Court because he did not have a license and because he was going to a friend's house in that area. But he denied that he was trying to evade Officer Smith.

Upon questioning by the court, Neal stated that no one asked for consent to search the vehicle, but he had been on the telephone with his father at that time. He never gave his keys to an officer and neither officer had his keys. When Neal asked the officers why they were searching his vehicle, Lt. McCloud stated that the baggie he saw gave them probable cause to search. Neal explained that the passenger door was unlocked. His keys, money, and phone were all in his pocket. The officer took everything from his pocket and put it on top of the car, and then gave it all back. The officer also had him get in the vehicle to determine whether the taillight was broken.

Following the testimony, the district court permitted the parties to argue their respective positions. Neal argued that he had been seized on the sidewalk when Officer Smith told him to stop. At that point, Officer Smith had no reasonable suspicion that there was anything in the vehicle to prove that a crime had occurred. The Commonwealth argued that based upon the totality of the circumstances of this case, the detention was justified. The court permitted the parties to file proposed findings of fact within two weeks.

On May 9, 2013, the district court entered its findings of fact and conclusions of law, denying the motion to suppress. The district court determined that the torn baggie, which was indicative of marijuana use, spotted by the officers in plain sight in the driver's seat gave rise to a search of the vehicle within Neal's wingspan. The pipe was found under the driver's seat, within his wingspan. The district court also found the officer's testimony that he had obtained consent to search the vehicle was a "more believable factual conclusion" and also supported a valid search. In addition, the district court found that the officer had a reasonable and articulable

suspicion that either Neal or one of his passengers had been or were about to be involved in criminal conduct because the vehicle matched the description of a vehicle that had been involved in several recent robberies.

On May 15, 2013, Neal moved to enter a guilty plea, conditioned on his right to appeal the district court's ruling on his motion to suppress. The district court accepted his plea following a colloquy and found him guilty of driving without an operator's license and possession of drug paraphernalia. The district court sentenced Neal to 45 days in the Hardin County Jail, probated the sentence for two years with conditions, and ordered him to pay $155.00 in court costs by October 29, 2013. Neal appealed the judgment to the circuit court. In an opinion entered August 22, 2013, the circuit court affirmed the district court's judgment, ruling that it properly denied Neal's motion to suppress. A three-judge panel of this Court granted Neal's motion for discretionary review, and this appeal now follows.

On appeal, Neal argues that his continued detention by Officer Smith after the initial stop was improper and that the torn plastic baggie was insufficient evidence of criminal activity to conduct a warrantless search of his vehicle. On the other hand, the Commonwealth contends that the ruling was proper. The Commonwealth also contends that Neal failed to preserve the second issue by raising it in his appeal to the circuit court. Based upon our review of the record, we hold that Neal adequately preserved this issue and note that both lower courts addressed the finding of the baggie in their respective rulings.

■ We do, however, agree with the Commonwealth that Neal failed to include any citations to the record in either the Statement of the Case or Argument, which is required by Kentucky Rules of Civil Procedure (CR) 76.12(4)(c):

(iv) A "STATEMENT OF THE CASE" consisting of a chronological summary of the facts and procedural events necessary to an understanding of the issues presented by the appeal, with ample references to the specific pages of the record, or tape and digital counter number in the case of untranscribed videotape or audiotape recordings, or date and time in the case of all other untranscribed electronic recordings, supporting each of the statements narrated in the summary.

(v) An "ARGUMENT" conforming to the statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

We shall not impose any penalty on counsel for Neal for this omission because the record was relatively brief, but counsel should comply with this requirement in future appellate briefs. In addition, Neal failed to include a recitation regarding the record pursuant to CR 76.12(6), and neither party served the circuit court from which the appeal was taken with a copy of their respective briefs pursuant to CR 76.12(5).

■ Turning to the merits of this appeal, we recognize that our standard of review of a ruling on a motion to suppress is two-fold. First, a reviewing court must determine whether the lower court's findings of fact are supported by substantial evidence. If so, such findings are conclusive. RCr 9.78; *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998). Second, the court must perform a *de novo*

review of those factual findings to determine whether the decision is correct as a matter of law. *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996); *Commonwealth v. Banks,* 68 S.W.3d 347, 349 (Ky.2001); *Garcia v. Commonwealth,* 185 S.W.3d 658, 661 (Ky.App.2006); *Stewart v. Commonwealth,* 44 S.W.3d 376, 380 (Ky.App.2000).

 "At a suppression hearing, the ability to assess the credibility of witnesses and to draw reasonable inferences from the testimony is vested in the discretion of the trial court." *Pitcock v. Commonwealth,* 295 S.W.3d 130, 132 (Ky.App.2009), citing *Commonwealth v. Whitmore,* 92 S.W.3d 76, 79 (Ky.2002). "On review, the appellate court should not reevaluate the evidence or substitute its judgment of the credibility of the witnesses for that of the jury." *Commonwealth v. Suttles,* 80 S.W.3d 424, 426 (Ky.2002), citing *Commonwealth v. Jones,* 880 S.W.2d 544 (Ky.1994). "In conducting our review, our proper role is to review findings of fact only for clear error while giving due deference to the inferences drawn from those facts by the trial judge." *Perkins v. Commonwealth,* 237 S.W.3d 215, 218 (Ky.App.2007) (citations omitted).

 Neal's first argument addresses whether his continued detention by Officer Smith was proper. He asserts that the district court made a finding that was not supported by the record and that this finding was affirmed by the circuit court. The finding relates to testimony attributed to Officer Smith: "The officer was attempting to reunite the occupants of the vehicle with the vehicle itself to initiate the stop for speeding and verify the documents which are normally presented in a traffic stop, including a license and insurance on the vehicle." The circuit court included a similar statement in its opinion. While Officer Smith testified that he walked Neal

and Mr. Fairman back to the vehicle to determine whether it was the one used in the robbery, Neal's testimony supports that the officer also requested documents to verify that the vehicle was properly on the road. Therefore, this finding is supported by substantial evidence and is conclusive.

Neal goes on to argue that Officer Smith did not have a reasonable suspicion that criminal activity was afoot to continue his detention and direct him and Mr. Fairman to accompany him back to the vehicle a few buildings down the street. There is no dispute that Neal and Mr. Fairman were seized when Officer Smith directed them to return to Neal's vehicle with him. Therefore, the question to be decided is whether Officer Smith had enough of a reasonable suspicion to continue the detention. Neal cites to *Strange v. Commonwealth,* 269 S.W.3d 847 (Ky.2008), to support this argument that the officer did not.

In *Strange,* the Supreme Court of Kentucky held that the trial court had improperly denied the defendant's motion to suppress evidence obtained during a pat down search. Two officers in police cruisers had been patrolling an area in Lexington known for prostitution and illegal drug activity after 11:00 p.m.; they routinely stopped everyone who was out at that time of night to question them. They saw the defendant standing between a pay phone and a van, and by the time they had turned around, the defendant was standing beside the van talking with the driver. One of the officers approached the defendant and directed him to move away from the van, and once he was away from the van and by the police cruiser, the defendant appeared to be nervous. Upon questioning, he reported that he was visiting someone who had been in the hospital. The officer conducted a pat down search for weapons and did not find any, but did

notice a bulge in his pants pocket. When the defendant stated that he did not know what the object was, the officer removed the object with the defendant's permission. The object was an unmarked prescription bottle containing Oxycontin and Xanax pills. The officer arrested the defendant at that point. *Id.* at 849. The trial court denied the defendant's motion to suppress based upon findings that he had been "in a neighborhood known for criminal activity late at night" and based upon his initial reaction when the police vehicles arrived. The "initial reaction" was his "movement from his position between the payphone and the van, to the driver side window of the van as the police passed by." *Id.* at 849–50.

With this factual background in mind, the Supreme Court stated that "[t]he proper legal standard to analyze the detention of Appellant by the police is whether from the totality of circumstances then apparent to the officers, whether there was articulable reasonable suspicion that either Appellant or the van driver had been or were about to be involved in criminal conduct." *Id.* at 850 citing *U.S. v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The Court concluded that the officer seized the defendant for Fourth Amendment purposes when he directed him to move away from the van. *Id.* at 850–51.

██ Turning to the question of whether the officer had an articulable, reasonable suspicion that criminal activity was afoot, the Court did not find the trial court's finding related to the defendant's "initial reaction," nor this Court's conclusion that he had evasively turned, to be supported by substantial evidence.

The movement described by the officers did not indicate that Appellant intended to hide or to conceal his appearance. It did not suggest an effort to run away or to elude the police. It did not indicate any reason to suspect that evidence or contraband was being carried, discarded, or hidden. The officers gave no explanation of Appellant's movement to distinguish it from any other action he might have made, sinister or innocent. Without the articulation of facts showing how the movement was suspicious, or, as the Court of Appeals termed it, "evasive," the *Terry* requirement is not satisfied. *See Joshua v. DeWitt,* 341 F.3d 430, 443–444 (6th Cir.2003) (concluding that simply characterizing conduct of a suspect as a "furtive gesture" was mere opinion, insufficient to justify a *Terry* stop without specific, articulable facts in the record to explain it).

*Strange,* 269 S.W.3d at 851–52. Because the officers could not articulate the grounds for their suspicion, the Court concluded that this finding of the trial court could not support the defendant's seizure. *Id.* at 852. Therefore, the only remaining factor was the defendant's presence at night in a high crime area; but "mere presence alone is not sufficient evidence to justify an investigatory stop and seizure." *Id.,* citing *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Accordingly, the Court held that the defendant's seizure was not based upon an articulable, reasonable suspicion and that the evidence obtained in the pat down search should have been suppressed. *Id.*

The Commonwealth cites to *Butler v. Commonwealth,* 367 S.W.3d 609, 613–14 (Ky.App.2012), in support of its argument that the detention was lawful:

Although an officer may detain a vehicle and its occupants in order to conduct an ordinary traffic stop, "any subsequent detention ... must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference." *U.S. v. Davis,* 430

F.3d 345, 353 (6th Cir.2005) (Citation omitted). Thus, an officer cannot detain a vehicle's occupants beyond completion of the purpose of the initial traffic stop "unless something happened during the stop to cause the officer to have a 'reasonable and articulable suspicion that criminal activity [is] afoot.'" *Id.* (Citation omitted). Furthermore, a traffic stop can invoke the requirements of *Miranda* when it is found that a suspect's "freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (Citation omitted).

In the present case, Neal contends that his alleged speeding and lack of a valid operator's license, along with Mr. Fairman's nervous behavior, did not give rise to a reasonable suspicion that any crime would be occurring where his vehicle was parked. Neal argued that he had not been driving evasively or trying to get away from the police cruiser. However, we are more persuaded by the Commonwealth's argument in this case. Neal testified that he was attempting to distance himself from his vehicle because he did not have a valid operator's license. It logically follows that Officer Smith would need to go to where the vehicle was parked in order to complete his inquiries into the ownership of the car and whether it could be legally driven. Furthermore, Officer Smith suspected that the vehicle had been used in recent robberies, and he needed to determine whether it was in fact the same car. Therefore, we agree with the lower courts that there was a reasonable and articulable suspicion that criminal activity was afoot.

■ For his next argument, Neal asserts that the plastic bag located in the vehicle was not sufficient evidence of criminal activity to conduct a warrantless search. He cites to *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), in support of this argument. In *Brown*, the United States Supreme Court addressed the plain view doctrine; specifically, the requirement that the criminal nature of such evidence in plain view must be immediately apparent:

> Indeed, *Colorado v. Bannister, supra* [449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980) ], was merely an application of the rule, set forth in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), that "[t]he seizure of property in plain view involves no invasion of privacy and *is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.*" *Id.*, at 587, 100 S.Ct. at 1380 (emphasis added). We think this statement of the rule from *Payton, supra,* requiring probable cause for seizure in the ordinary case, is consistent with the Fourth Amendment and we reaffirm it here.

*Brown*, 460 U.S. at 741–42, 103 S.Ct. at 1543 (emphasis in original, footnote omitted).

In the present case, Officer Smith testified that the piece of torn baggie was consistent with the use of marijuana, and he explained that a piece would be torn off when the baggie was tied once the marijuana was placed inside. Thus, we hold that this evidence found in plain view in the vehicle was enough to justify the warrantless search of the vehicle.

■ While he did not raise the issue in his brief, we also hold that the trial court's finding that Neal had consented to the officers' search of the vehicle was supported by substantial evidence, especially in light of Neal's contradictory testimony related to how the officers gained access.

For the foregoing reasons, the opinion of the Hardin Circuit Court affirming the

judgment of the Hardin District Court is affirmed.

ALL CONCUR.