RENDERED: APRIL 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0079-MR

CODY S. PATRICK                                          APPELLANT

v.             APPEAL FROM PERRY CIRCUIT COURT
HONORABLE ALISON C. WELLS, JUDGE
ACTION NO. 22-CR-00057

COMMONWEALTH OF KENTUCKY                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, KAREM, AND McNEILL, JUDGES.

GOODWINE, JUDGE: The Appellant, Cody S. Patrick ("Patrick"), appeals the

Perry Circuit Court's final judgment and sentence of imprisonment entered on

December 28, 2022, after the denial of his motion to suppress evidence and the

entry of a conditional guilty plea. After a careful review of the record, we affirm.

## BACKGROUND

On February 25, 2022, Patrick was indicted on the charges of first-

degree possession of a controlled substance and possession of drug paraphernalia

based on evidence seized from a vehicular search. Patrick filed a motion to suppress, alleging he had been unlawfully seized before the search and the evidence recovered should have been excluded as fruit of the poisonous tree.

A suppression hearing was held on June 17, 2022. The Commonwealth called Hazard Police Officers Assistant Chief James Whitaker ("Whitaker") and Lieutenant John Holbrook ("Holbrook") to testify. The defense recalled Whitaker for additional questioning and called Patrick and Hazard Police Officer Michael Ritchie ("Ritchie") to testify.

The exact sequencing of the events is in dispute. Still, testimony established that during the evening of April 15, 2021, Kentucky State Police ("KSP") Post 13 dispatch received an anonymous tip concerning two unconscious subjects inside a vehicle parked in a Wal-Mart public lot in Hazard, Kentucky. KSP Post 13 dispatch contacted the Hazard Police Department and requested a wellness check. Video Record ("VR") 6/17/2022 at 10:06:48-10:07:05. Whitaker and Ritchie responded to the call.

Upon arrival at the scene, the officers parked their patrol car behind a vehicle matching the description in the call, and the officers observed Patrick and his girlfriend, Makayla Rowlett ("Rowlett"), asleep inside. Whitaker tapped on the driver's side window where Patrick was seated, prompting him to awaken. The officers made initial wellness inquiries, and Patrick indicated no assistance was

needed. To ensure he was okay, Whitaker had Patrick exit the vehicle while Ritchie had Rowlett exit from the passenger side. *Id.* at 10:07:00-40, 10:17:05-19, 10:18:54-10:19:10.

After exiting the vehicle, Patrick and Rowlett were questioned. Whitaker asked if there was anything in the vehicle, and Patrick informed them there was a fake soda can with methamphetamine hidden inside. Whitaker called for Holbrook to be dispatched to the scene with a drug dog.

Patrick informed the officers they were homeless and sleeping in the vehicle overnight. The officers asked for Patrick's and Rowlett's identification and subsequently learned they had outstanding arrest warrants. Whitaker testified it was at this point that Patrick was placed in handcuffs. *Id.* at 10:07:41-10:08:34, 10:36:10-25, 10:46:21-46. Patrick and Ritchie contradicted Whitaker's testimony and testified he was handcuffed immediately upon exiting the vehicle.

Sometime after this, Rowlett consented to the officers to search the vehicle. Holbrook arrived ten minutes after the officers first approached and performed a canine open-air sniff of the vehicle, resulting in an alert to the presence of drugs. A subsequent vehicular search yielded the discovery of three needles and six baggies of methamphetamine located in a fake soda can with a screw-on top. *Id.* at 10:08:35-52, 10:11:00-46.

The trial court denied the motion to suppress on July 12, 2022, and a conditional guilty plea preserving the right to appeal was entered on November 29, 2022. Patrick received a two-year sentence of imprisonment. This appeal followed.

## STANDARD OF REVIEW

"Our standard of review of the trial court's denial of a suppression motion is twofold. First, the trial court's findings of fact are conclusive if they are supported by substantial evidence; and second, the trial court's legal conclusions are reviewed de novo." *Kavanaugh v. Commonwealth*, 427 S.W.3d 178, 180 (Ky. 2014) (citations omitted). "*Substantial evidence* means evidence that when taken alone or in light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." *Turley v. Commonwealth*, 399 S.W.3d 412, 420 (Ky. 2013) (emphasis in original) (internal quotation marks and citation omitted). "This does not mean the finding must include undisputed evidence, but both parties **must present adequate evidence** to support their position." *Brown v. Commonwealth*, 253 S.W.3d 490, 500 (Ky. 2008) (emphasis added) (citation omitted).

## ANALYSIS

"The first step in determining whether there has been a Fourth Amendment violation[] is finding whether and when a seizure or a search

-4-

occurred." *Commonwealth v. Garrett*, 585 S.W.3d 780, 790 (Ky. App. 2019). "When police officers, by means of physical force or show of authority, in some way restrain the liberty of a citizen, a 'seizure' of that person has occurred." *Strange v. Commonwealth*, 269 S.W.3d 847, 851 (Ky. 2008); *see also Reynolds v. Commonwealth*, 393 S.W.3d 607, 610 (Ky. App. 2012) ("Factors indicative of restraint on liberty include the threatening presence of several officers, physical touching of the person, or use of a tone or language that might compel compliance with the request of the police.") (internal quotation marks and citation omitted); *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004) ("[W]e recognize that words alone may be enough to make a reasonable person feel that he would not be free to leave.") (citations omitted). "[A] person has been seized in the constitutional sense when, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave." *Strange*, 269 S.W.3d at 851 (citation omitted). A "brief detention of a person by a police officer . . . may properly be undertaken only if the police officer has a reasonable suspicion based upon objective, articulable facts that criminal activity is afoot." *Id.* at 850 (citations omitted).

Before we delve into the merits of Patrick's claims, we must first address an issue of standing raised by the Commonwealth. "A defendant bears the burden of establishing standing to challenge a Fourth Amendment search. That

burden requires proof that the defendant had a legitimate expectation of privacy in the premises." *Ordway v. Commonwealth*, 352 S.W.3d 584, 592 (Ky. 2011) (citations omitted).

The Commonwealth contends that Patrick lacked any legitimate expectation of privacy in the vehicle because he failed to establish that he was the owner or that the original owner granted him possession. Patrick testified at the suppression hearing that the vehicle's original owner was "some woman from Wolfe County." VR 6/17/2022 at 10:43:11-16. Patrick further testified he had recently bought the vehicle from the ex-boyfriend of his mother but had not yet legally transferred the title under Patrick's name. *Id.* at 10:43:54-10:44:22. No further details were provided.

It is unnecessary to analyze whether Patrick sufficiently established ownership or control over the vehicle because even if he:

> did not have a reasonable expectation of privacy in the vehicle's interior, this does not mean that his Fourth Amendment rights were not implicated. Two different interests are [at] stake: a seizure and a search. **All occupants of a car have the right to contest their unlawful seizure that is independent of their property interest**. Although a defendant may lack the requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle, **the defendant may nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the illegal detention**.

-6-

*Bolin v. Commonwealth*, 592 S.W.3d 305, 313 (Ky. App. 2019) (emphasis added) (citation omitted).

On appeal, Patrick argues he was illegally detained, and incriminating evidence was found. Because Patrick asserts the evidence was the fruit of an illegal seizure of his person, Patrick's expectation of privacy from a vehicle search is not a factor.

"All searches without a valid search warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. The burden is on the prosecution to show the search comes within an exception." *Gallman v. Commonwealth*, 578 S.W.2d 47, 48 (Ky. 1979). "The result of a successful motion to suppress is the exclusion from admission at trial of any wrongfully acquired evidence." *Commonwealth v. Bedway*, 466 S.W.3d 468, 476 (Ky. 2015) (citations omitted). "The purpose of the exclusionary rule has historically been twofold: (1) to deter police misconduct by excluding evidence obtained in violation of the Fourth Amendment to the U.S. Constitution; and (2) to encourage compliance with the constitutional protection against unreasonable searches and seizures." *Id.* (citations omitted).

The community caretaking function may provide an exception to the warrant requirement. "Often described as those functions **'totally divorced from the detection, investigation, or acquisition of evidence relating to' a crime**,

community caretaking, it's fair to acknowledge and appreciate, occupies much of a police officer's day." *United States v. Morgan*, 71 F.4th 540, 544 (6th Cir. 2023) (emphasis added) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441-43, 93 S. Ct. 2523, 2528, 37 L. Ed. 2d 706 (1973)).

> Officers help lost children return home, find missing persons, rescue pets, deal with domestic disputes before they get out of hand, keep an eye on a home when the resident travels, lock an unlocked door, arbitrate disagreements between neighbors about loud music, respond to health emergencies, check in on the elderly or those facing addiction challenges on behalf of their relatives, and help inebriates by preventing them from placing others at risk and by ensuring that they get home safely.

*Morgan*, 71 F.4th at 543 (citations omitted).

"[F]or the community-caretaking function to apply there must be some specific and articulable facts that would lead the officer to reasonably believe the citizen [needs] assistance. An officer's practice cannot provide reasonable grounds." *Poe v. Commonwealth*, 169 S.W.3d 54 (Ky. App. 2005) (citation omitted). "[T]he community caretaker exception does not provide the government with refuge from the warrant requirement except when [the] delay is reasonably likely to result in injury or ongoing harm to the community at large." *United States v. Washington*, 573 F.3d 279, 289 (6th Cir. 2009). "In this caretaking setting, as in all of them, the intrusion must reasonably match the problem at hand." *Morgan*, 71 F.4th at 545-46.

-8-

The trial court concluded that the officers' initial approach was consensual and permissible in the interest of the community caretaking function. We agree with this finding when viewing all these facts within their totality. After making initial inquiries, the record establishes that Patrick told the officers he did not need any assistance. The officers asked the occupants to exit the vehicle to ensure they were okay. Patrick and Rowlett exited the vehicle at the request of the officers.

From the point after the occupants exited the vehicle, Whitaker's and Ritchie's testimony significantly diverged. Ritchie testified Patrick was "detained . . . very soon due to some of the actions he was taking." VR 6/17/2022 at 10:35:53-10:36:01.

Ritchie did not offer any testimony indicating the situation threatened the officer's or community's safety. However, it is not unreasonable for officers to request occupants exit a vehicle following a lawfully valid stop or interaction with the public. Ritchie could not remember if Whitaker or he learned about the outstanding arrest warrants before using handcuffs. *Id.* at 10:40:12-10:41:15. After Ritchie's testimony, Patrick was called to the witness stand and testified he was handcuffed immediately after exiting the vehicle. *Id.* at 10:42:08-17.

The Commonwealth called Whitaker as a rebuttal witness. Upon taking the stand, Whitaker was asked by Mr. Williams, "at what point was Mr. Patrick placed in cuffs?" to which he responded:

> **Assistant Chief Whitaker**: It was after we figured out who he was. He told us his name and information, and he was acting suspiciously. And then we found out he had warrants, and then we cuffed him.

*Id.* at 10:45:55-10:46:13.

The trial court entered an order denying suppression, concluding that in their role as community caretakers, the officers were justified to make initial contact with the vehicle's occupants, and the evidence was legitimately recovered during a proper wellness check. Record (R.) at 39. The trial court made the following findings of fact:

> Asst. Chief Whitaker testified that Mr. Patrick was placed in handcuffs, advised of the outstanding warrant, advised of his Miranda[1] rights and then asked if there was anything illegal in the vehicle and that Mr. Patrick advised there was meth in a mountain dew can[2] in the vehicle.

R. at 38. The Commonwealth concedes that this specific finding does not comport

---

[1] The Commonwealth acknowledges that Whitaker's testimony was that he did not read Patrick his *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), rights. VR 6/17/22 at 10:20:01.

[2] The testimony was that it was a Canada Dry can.

with Whitaker's testimony. After a careful and thorough review of the record, we conclude that some of the trial court's findings are "arbitrary, clearly erroneous in their overall effect, and directly contradicted by the evidence viewed in its entirety." *See Turley*, 399 S.W.3d at 420. As a result, and due to a disagreement among the parties regarding the facts at issue, we rely on the record of the suppression hearing. *See Commonwealth v. Clayborne*, 635 S.W.3d 818, 823 (Ky. 2021) (discussing *Turley*, 399 S.W.3d at 415 ("The Court, in lieu of using the lower court's findings, relied upon the record itself to determine the relevant fact.")).

It is undisputed that Patrick was not suspected of a crime upon the officers' first approach and when he was asked to exit his vehicle. Whitaker testified that Patrick indicated he was "okay" in response to wellness check inquiries, Officer Ritchie additionally testified Patrick woke up "pretty easy." *See Mundy v. Commonwealth*, 342 S.W.3d 878, 885 (Ky. App. 2011); § 32:7. *Community caretaker doctrine*, 5 WHARTON'S CRIMINAL PROCEDURE § 32:7 (14th ed. 2023) ("The community caretaker doctrine does not apply where there is no indication that the subject of the encounter needs aid.") (footnote omitted). Whitaker testified he wanted to "have a conversation" and "double-check" Patrick's wellbeing. *See id.* ("This does not mean, however, that police officers

may not conduct further investigation where they suspect, but are not sure, the subject needs help.") (footnote omitted).

Due to the fact-intensive nature of Fourth Amendment inquiries, it is important to look at each step individually concerning the officers' interaction with Patrick and Rowlett. First, Whitaker received a call that triggered a welfare check on Patrick and Rowlett. As the trial court correctly found, Whitaker and Ritchie were free to approach Patrick in a public place according to *Banks*, *supra.* Additionally, the trial court correctly found that Whitaker and Ritchie were acting as community caretakers according to *Poe*, *supra*, because of the call they received about two individuals passed out in the Walmart parking lot.

The analysis becomes more difficult at this point. Whitaker testified that he approached the driver's side of the vehicle, where Patrick was sitting, pecked on the window, asked if he was okay, and then asked him to step out of the vehicle. VR 6/17/22 at 10:18:32. The Sixth Circuit Court of Appeals recently looked at a similar issue related to an officer's community-caretaking function in *Morgan*, 71 F.4th 540. In *Morgan*, officers noticed a man who appeared to be passed out at the wheel of a stopped, still running, car. *Id.* at 541. Without knocking on the car door, or trying to arouse him, the officer opened the car door and asked if everything was okay. *Id.* The Sixth Circuit held that because the officer opened the door without employing other similar less-intrusive measures to

check on Morgan's safety he exceeded the limits of the Fourth Amendment. *Id.* at 547. In this case, Whitaker acted in conformance with his community-caretaking function to not exceed the limits of the Fourth Amendment. Whitaker employed less intrusive measures by first knocking on Patrick's door to awaken him and then asking him to step out of the vehicle. VR 6/17/22 at 10:18:32.

It is important to note that Whitaker asked Patrick to exit the vehicle rather than removing or ordering him to exit the vehicle. "[P]olice officers are authorized to order passengers to exit a vehicle while a minor traffic stop is completed." *Butler v. Commonwealth*, 367 S.W.3d 609, 613 (Ky. App. 2012) (citations omitted). Such authorization is justified, in part, "as an attempt at minimizing the risk of assault an officer may face by a person seated in an automobile." *Id.* The same reasoning would apply to welfare checks as well, considering the concern for officer safety is no different when an officer approaches a vehicle during a welfare check instead of a traffic stop.

Whitaker testified that he asked Patrick out of the vehicle to double-check that Patrick was okay. VR 6/17/22 at 10:18:32. This signifies that Whitaker was still pursuing the purpose of the original interaction, the welfare check. Considering that Whitaker was actively still engaging in a welfare check and the important concern for officer safety, it was reasonable for Whitaker to ask Patrick to exit the vehicle. "What is at most a mere inconvenience cannot prevail when

balanced against legitimate concerns for the officer's safety." *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333, 54 L. Ed. 2d 331 (1977).

Once Patrick exited the vehicle, Whitaker questioned him. Whitaker did not recall the exact sequence of his questions, but his standard practice was to ask who they were and then ask if there was anything in the car he needed to know about. Patrick replied that he had meth in a fake can. "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 885 S. Ct. 1868, 1879 n.16, 20 L. Ed. 2d 889 (1968). The United States Supreme Court has stated, "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual." *Florida v. Bostick*, 501 U.S. 429, 434-35, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991) (citing *INS v. Delgado*, 466 U.S. 210, 216, 104 S. Ct. 1758, 1762, 80 L. Ed. 2d 247 (1984)). Furthermore, this is permissible "as long as the police do not convey a message that compliance with their requests is required." *Id.* at 435, 111 S. Ct. at 2386.

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable

person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439, 111 S. Ct. at 2389. Patrick argues that he did not feel free to leave. However, the test is whether a reasonable person would have felt free to leave. The United States Supreme Court provided a list of considerations when looking at whether there was a seizure or not in *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several [police] officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 554, 100 S. Ct. at 1877. The Commonwealth acknowledges that both Whitaker and Ritchie were present. However, Ritchie was riding with Whitaker because he was still in training. There was no evidence that either officer displayed their weapon. Whitaker's testimony did not indicate that he touched Patrick until after he found out that he had an active warrant, and then he placed handcuffs on him. There was no testimony that either officer was using language or a tone of voice that indicated a requirement for compliance.

In sum, Patrick was not seized under the Fourth Amendment until Whitaker discovered Patrick's active warrant.

Patrick further argues that the stop was unreasonably extended by police action. Patrick is correct that the United States Supreme Court has held that police may not extend or prolong stops without reasonable, articulable suspicion to conduct further investigation. *Rodriguez v. United States*, 575 U.S. 348, 355, 135 S. Ct. 1609, 1615, 191 L. Ed. 2d 492 (2015). However, in this case, based on Patrick's statements, Whitaker developed a reasonable articulable suspicion to conduct an investigatory stop before completing the welfare check.

The Kentucky Supreme Court has held "an officer reasonably may ask for the identification and perform a criminal-records check of a driver and any passengers during an otherwise lawful traffic stop to determine an individual's prior contact with law enforcement." *Carlisle v. Commonwealth*, 601 S.W.3d 168, 179 (Ky. 2020). "Such a task is an ordinary inquiry related to officer safety. *Id.* "Accordingly, Officer Powers's collecting of Carlisle's identification and subsequent checking of his criminal history was not an unrelated inquiry that prolonged the traffic stop." *Id.* Considering this is an ordinary inquiry, and it is conducted in the interest of officer safety it seems logical that the same principles would apply when an officer approaches a vehicle for a welfare check.

While completing the welfare check, Whitaker asked Patrick a few brief questions and obtained identifying information. Before Whitaker received confirmation that Patrick had an active warrant, Patrick told Whitaker there was

-16-

meth in the car. This established, at a minimum, a reasonable articulable suspicion that the vehicle contained contraband. To be sure, Whitaker asked Holbrook to the scene to conduct a free-air sniff with a drug dog. According to Holbrook, the drug dog alerted to the odor of narcotics, which established probable cause to search the vehicle. Rowlett consented to a search. It is unclear from the evidence whether Patrick also consented. The subsequent search revealed narcotics.

Patrick argues that the evidence against him should have been suppressed because he was not Mirandized. However, Patrick was not in custody for purposes of *Miranda* when he was asked to exit the vehicle. "[C]ustody is a judicially defined legal term of art, untied as it were from many of the usual senses of the term – it is limited to circumstances that entail "a serious danger of coercion." *Smith v. Commonwealth*, 520 S.W.3d 340, 348 (Ky. 2017) (citations omitted). "The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave." *Smith v. Commonwealth*, 312 S.W.3d 353, 358 (Ky. 2010).

As noted above, Whitaker approached Patrick's vehicle, tapped on the window, and awakened Patrick and Rowlett. Whitaker asked Patrick if he was okay, but Whitaker wanted to ensure he was okay and asked him to step out of the vehicle. Whitaker then briefly questioned Patrick, and he made incriminating statements. It is a fundamental principle that *Miranda* only applies to compelled

self-incrimination. "Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, *if not coerced*, are inherently desirable. . . . Absent some *officially coerced* self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *Smith*, 312 S.W.3d at 358 (internal quotation marks and citations omitted).

The facts here do not indicate that Patrick was in custody for purposes of *Miranda*, nor was he coerced into making the incriminating statement about the methamphetamine in the vehicle. "There was nothing to indicate to [Patrick] that he was being arrested; he was not detained in a patrol car, was not handcuffed, was not touched or physically searched by [Whitaker], was not threatened with arrest while being questioned, and [Whitaker's] weapon was never displayed." *Butler*, 367 S.W.3d at 614 (citations omitted). Accordingly, Patrick was not in custody for purposes of *Miranda.*

The trial court's findings erroneously state that Patrick was asked about the vehicle's contents after being Mirandized and arrested for the warrants. R. at 38. Nothing in the record demonstrates if or when *Miranda* rights were ever read,[3] and the testimony most reasonably establishes that Patrick's admission

---

[3] The trial court's findings state a computer-aided dispatch ("CAD") report indicates *Miranda* rights were read, but our review of the video record did not demonstrate a CAD report was formally admitted into evidence during the suppression hearing. R. at 39; *see Sunrise Children's Services, Inc. v. Kentucky Unemployment Insurance Commission*, 515 S.W.3d 186, 190 (Ky. App. 2016) ("Courts have no authority to consider evidence outside the record or to incorporate new proof into the record.") (internal quotation marks and citation omitted).

-18-

concerning the methamphetamine was made before the discovery of the warrants. It is undisputed that Patrick had outstanding warrants.

Regarding the consent to search in this matter, "[i]t is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854 (1973) (citations omitted). However, the trial court found:

> The defendant did not challenge the search of the vehicle as either unlawful or that he denied permission for the search, or that Ms. Rowlett consented to the search.

R. at 39. Likewise, on appeal, Patrick does not challenge that consent was given to search the vehicle.

## **CONCLUSION**

Searches and seizures conducted without a warrant are presumed unconstitutional without a recognized exception. The Commonwealth must prove such an exception and meet its evidentiary burden. It did so in this case. For the foregoing reasons, we affirm the order of the Perry Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Adam Meyer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

J. Grant Burdette
Assistant Attorney General
Frankfort, Kentucky