**COMMONWEALTH of Kentucky,**
**Appellant,**

v.

**Mary SANDERS, Appellee.**

No. 2009–CA–002398–MR.

Court of Appeals of Kentucky.

Jan. 14, 2011.

Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Frankfort, KY, for appellant.

Thomas M. Ransdell, Department of Public Advocacy, Frankfort, KY, for appellee.

Before CLAYTON, COMBS, and WINE, Judges.

*OPINION*

COMBS, Judge:

The Commonwealth of Kentucky appeals an order of the Kenton Circuit Court granting Mary Sanders's motion to suppress evidence. After our review, we affirm.

On February 2, 2009, Covington Police Officer Justin Bradbury observed Sanders walking on Greenup Street. A man walking in front of her turned onto Pleasant Street, and then Sanders turned down Pleasant Street in the same direction. Approximately two hours later, Officer Bradbury observed Sanders walking down Greenup Street travelling in the opposite direction.

Officer Bradbury testified that he approached Sanders and asked her name and why she was in the area. Sanders told him that she was on her way home from the house of a family member. She also gave him the name "Cassandra Baldwin." Since Sanders did not have any form of

Kentucky identification with her, Officer Bradbury asked the dispatcher to search for it. No sort of identification could be found for that name.

Officer Bradbury then asked Sanders for her Social Security Number (SSN). The number that she gave was identified as a man who lived in Louisville. At that point, Officer Bradbury advised Sanders that it is a crime to give the police false information. She still insisted that her name was Cassandra Baldwin and that she had provided the correct SSN. After Officer Bradbury told Sanders that she was committing identity theft (a felony), she admitted that her name was Mary Sanders. She claimed that she had lied because there was an outstanding warrant for her arrest. Officer Bradbury confirmed the warrant and placed Sanders under arrest.

Sanders was indicted on one count of theft of identity. In October 2009, she filed a motion to suppress evidence derived from her detention. The trial court entered the order granting her motion on December 9, 2009. This appeal follows.

Our standard of review is dual in nature. While we may not disturb the trial court's findings of fact if they are supported by substantial evidence, we review its legal conclusions *de novo*. *Commonwealth v. Marr*, 250 S.W.3d 624, 626 (Ky.2008).

▪▪▪ The trial court concluded that Sanders was illegally detained. We agree. The Fourth Amendment of the federal Constitution and Section 10 of Kentucky's Constitution assure protection from unreasonable seizure of one's person. Seizure has been defined as detention of an individual in a situation where a reasonable person would not feel that he had the option of leaving. *Baltimore v. Commonwealth*, 119 S.W.3d 532, 537 (Ky.App.2003). In order to conform to Fourth Amendment protection, the United States Supreme

Court has required a **"demand for specificity** in the information upon which police action is predicated." *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880 n. 18, 20 L.Ed.2d 889 (1968). (Emphasis added.) *Terry* holds that a seizure of a person must be justifiable by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 1880.

▪▪▪ The Supreme Court of the United States has discussed seizures for the purpose of identification in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). While probable cause of a suspect's participation in criminal activity is required for an arrest, the lesser standard of reasonable suspicion is a sufficient basis for a police officer to stop and question someone. *Id.* at 51, 2641. The Court also clarified the nature of a seizure, holding that it:

> must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.

*Id.* at 51, 2640. The Court concluded that "stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity" is not permitted by the Fourth Amendment. "When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits." *Id.* at 52, 2641.

We are persuaded that the case before us falls squarely under *Brown*. The Commonwealth recites several reasons to justify Officer Bradbury's decision to approach Sanders. Nonetheless, we cannot conclude that they rise to the level of any

reasonable suspicion that Sanders was involved in criminal activity by the mere act of walking on a street. In this case, most of the factors offered by the Commonwealth occurred **after** Officer Bradbury detained Sanders. The Supreme Court has clearly mandated that reasonable suspicion must be determined **before** the stop occurs and not be justified in a boot-strap fashion of rationalization by hindsight.

The Commonwealth also argues that Sanders was in a neighborhood that is known for drug activity; that it was late at night; that she was seen following someone; that she returned to the street; that she gave a false name (again, a fact only known after the stop had occurred); and that she seemed nervous. These factors simply do not constitute **reasonable** suspicion of criminal activity.

As the trial court correctly observed, after Officer Bradbury did not find a license for the name that Sanders initially provided, the encounter became a detention. Officer Bradbury actually testified that at that point Sanders asked to leave, and he refused her request. Therefore, we must determine whether the reasons leading up to that detention were sufficient to provide reasonable suspicion of criminal activity.

The Supreme Court of Kentucky has recently held that being in a high crime area at night is not *per se* sufficient to provide reasonable suspicion justifying police interference. *Strange v. Commonwealth,* 269 S.W.3d 847, 852 (Ky.2008). It has also held that nervousness is not a reason for detention (though it can be a factor). *Adkins v. Commonwealth,* 96 S.W.3d 779, 788 (Ky.2003). Officer Bradbury testified that Sanders appeared nervous. She explained a possible—and plau-

sible—cause for her nervousness. As she walked alone in a bad neighborhood, the police car slowly drove past her more than once before stopping. Also, when questioned, Officer Bradbury was not able to articulate what specific signs of nervousness Sanders exhibited—other than picking up her pace.[1] She did not attempt to flee the scene.

Contrary to the Commonwealth's contention, Sanders testified that she was **not** following someone when she passed through Greenup Street the first time. Pedestrians walk through the same places and spaces. The Commonwealth offered no evidence to prove otherwise which would compel us to overrule the decision of the trial court. Mere suspicion could not be inferred from the act of walking on a street in conjunction with other passersby. To hold otherwise would truly raise the pernicious specter of a police state.

Accordingly, pursuant to the clear precedent of the Supreme Court of the United States in *Brown,* we affirm the order of the Kenton Circuit Court.

ALL CONCUR.

---

1. We note parenthetically that this encounter took place in the early morning hours during February—a fact that could be a rational explanation for a quickened gait as easily as an inference of guilt.