RENDERED: APRIL 26, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2016-SC-000429-DG

DATE 8/16/18 Kim Redmon, DC

RAKIM MOBERLY                                                    APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2015-CA-000370-MR
FAYETTE CIRCUIT COURT NO. 14-CR-00102


COMMONWEALTH OF KENTUCKY                                         APPELLEE


**OPINION OF THE COURT BY JUSTICE VENTERS**

**REVERSING**


Appellant, Rakim Moberly, appeals from the Court of Appeals' decision which affirmed the trial court's denial of his motion to suppress evidence discovered in his vehicle during a traffic stop. Upon entering a conditional plea to preserve the issue for appeal, Appellant was convicted of possession of a controlled substance, first degree, and carrying a concealed deadly weapon. The controlled substance and the weapon were found after a canine sniff search indicated the presence of drugs. We granted discretionary review to consider whether the initial traffic stop had been impermissibly prolonged to

allow the canine search to proceed. For the reasons stated below, we reverse the Court of Appeals' decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lexington Police Officer Roman Sorrell was following a vehicle in the very early hours of a December morning. He performed a registration check on the vehicle license number and discovered that the vehicle's registration had been cancelled because it had no liability insurance coverage. Sorrell initiated a traffic stop of the vehicle at 3:35 a.m. Appellant was driving the vehicle.

At Sorrell's request, Appellant provided his driver's license. He told Sorrell that the car was not his and that he could not provide proof of insurance. Sorrell described Appellant as fully cooperative but abnormally nervous and sweating at the brow. Appellant was smoking a cigarette and blowing the smoke into the vehicle's interior. He kept looking toward the right side of the car.

Sorrell took Appellant's driver's license back to his cruiser and began writing the traffic citation. He also spent about five minutes accessing a jail website and a police database to find out more information about Appellant. That inquiry disclosed that Appellant had been charged previously with trafficking in marijuana and carrying a concealed deadly weapon; it did not indicate whether Appellant had been convicted of these charges.

Sorrell returned to Appellant's vehicle. He told Appellant that he knew about the prior charges. He asked if Appellant had drugs or weapons in the vehicle. Appellant said he did not. Sorrell asked for consent to search the

2

vehicle, and Appellant declined. Sorrell acknowledged that at that point in the usual traffic stop, he would have given the driver a citation and let him leave. However, because Appellant seemed nervous, was sweating, blew his cigarette smoke into the vehicle instead of toward the officer, kept looking to the right side of the car, and had prior charges, Sorrell decided that he would detain Appellant further while he called for a canine unit to conduct a sniff search of the vehicle.

The canine handler, Officer Jones, arrived with the dog within a few minutes. After speaking to Sorrell and Appellant, Jones retrieved the dog and conducted a sniff search of the car. The dog alerted to indicate the presence of drugs on the driver's side of the vehicle.

Sorrell and yet another officer who had arrived on the scene then searched Appellant's vehicle. In the glove compartment (not on the driver's side of the car as the dog indicated), they found a cigarette box containing cocaine and methylone, a controlled substance they thought was heroin. They also found a handgun under the driver's seat. Appellant was arrested at 4:20 a.m., some forty-five minutes after the initial stop.

Appellant was indicted on two counts of trafficking in a controlled substance (heroin[1] and cocaine); receiving stolen property (the firearm); and carrying a concealed deadly weapon. He moved to suppress the incriminating

_____

[1] This charge was amended to trafficking in a controlled substance, second degree.

3

evidence on the basis that he was detained by the sniff search beyond the time reasonably required to complete the traffic stop.

After the trial court denied the suppression motion, Appellant preserved his right to appeal by entering a conditional guilty plea to one count of possession of a controlled substance, first degree, cocaine, and carrying a concealed deadly weapon. The Court of Appeals affirmed the trial court's denial of Appellant's motion to suppress. We granted discretionary review.

## II. ANALYSIS

When reviewing a trial court's ruling on a motion to suppress, the findings of fact are reviewed under a clearly erroneous standard, and the conclusions of law are reviewed de novo. *Davis v. Commonwealth*, 484 S.W.3d 288, 290 (Ky. 2016) (citations omitted). Since the parties do not challenge the trial court's findings of fact, we turn our attention to the trial court's conclusions of law.

The trial court concluded, and no one disputes, that the initial traffic stop was justified when Sorrell obtained information indicating that the vehicle was uninsured. *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001) ("[A]n officer who has probable cause to believe a civil traffic violation has occurred may stop a vehicle regardless of his or her subjective motivation in doing so.").

The trial court also acknowledged our holding in *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013), that a lawful traffic stop may nevertheless violate an individual's Fourth Amendment rights

4

'if its manner of execution unreasonably infringes interests protected by the Constitution'[2] or it 'last[s] longer than is necessary to effectuate the purpose of the stop.'[3] Generally, if an officer unreasonably prolongs the investigatory stop in order to facilitate a dog sniff, any resulting seizure will be deemed unconstitutional.

We also said in *Bucalo* that a traffic stop may be prolonged beyond the time required to effectuate the purpose of the stop when additional information properly obtained during the stop provides the officer with a reasonable and articulable suspicion that other criminal activity is afoot. *Id.* at 259 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

At the time of its ruling, the trial court did not have the benefit of the Supreme Court's more recent statement on this issue in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), nor did it have our post-*Rodriguez* decision, *Davis v. Commonwealth*, 484 S.W.3d 288 (Ky. 2016). *Davis* and *Rodriguez* involved the increasingly common scenario we see here: a police officer ostensibly stops a vehicle for an observed traffic violation but also harbors suspicions of criminal drug activity inadequate to justify a search. A drug dog arrives on the scene within minutes to conduct a sniff search concurrently with the traffic stop. *Rodriguez* highlighted and clarified several principles relevant to this scenario.

First, the Fourth Amendment tolerates certain unrelated investigations conducted during a routine traffic stop as long as they do not lengthen the

---

[2] Quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

[3] Quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983).

roadside detention. The traffic stop may not be prolonged beyond the point reasonably required to complete the stop's mission. Otherwise, the stop constitutes an unreasonable seizure. 135 S. Ct. at 1614-1615.

Second, "[a]uthority for the seizure [of the vehicle and the driver] ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 1614. "[I]n determining the reasonable duration of a stop, 'it [is] appropriate to examine whether the police diligently pursued [the] investigation.'" *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).

More significantly, however, *Rodriguez* addressed the burgeoning question of whether prolonging the stop for a "*de minimis*" time to conduct additional investigation unrelated to the purpose of the initial stop would be regarded as constitutionally significant. The *Rodriguez* Court noted that officers may slightly extend the stop with "certain negligibly burdensome precautions" needed to assure their safety. *Id.* at 1616. No constitutional violation occurs because those precautionary measures are directly connected to the mission of the initial traffic stop. "On-scene investigation into other crimes, however, detours from that mission." *Id.* The Court specifically noted that a dog sniff search to find drugs lacks a close connection to the legitimate purpose of the traffic stop; the sniff search "is not fairly characterized as part of the officer's traffic mission." *Id.* at 1615.

In short, in *Rodriguez* the Supreme Court issued a blunt rejection of the argument that a "*de minimis*" extension of the time taken for the stop does not offend the Fourth Amendment:

6

> As we said in *Caballes* and reiterate today, a traffic stop 'prolonged beyond' that point is 'unlawful.' The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff 'prolongs'—*i.e.,* adds time to—'the stop.'

*Id.* at 1616 (internal citations omitted).

Applying *Rodriguez,* we held in *Davis v. Commonwealth* that "*any* prolonging of the stop beyond its original purpose is unreasonable and unjustified; there is no '*de minimis* exception' to the rule that a traffic stop cannot be prolonged for reasons unrelated to the purpose of the stop." 484 S.W.3d at 294.

Appellant concedes that the initial traffic stop was valid, but he contends that the stop was unconstitutionally prolonged on two occasions. First, he argues that Sorrell's legitimate mission—issuing traffic citations for the vehicle registration and insurance violations—was impermissibly extended without good cause when Sorrell diverted his attention from writing the traffic citation and spent several minutes searching online databases for information pertaining to Appellant

Second, Appellant contends that, even if Sorrell's time spent searching the online databases was part of his diligent pursuit of the traffic citation, deferring the traffic citation to call in the canine unit and waiting for the dog sniff unconstitutionally prolonged his detention.

We note at this point that *Rodriguez* identifies as one of the routine tasks associated with a proper traffic stop a check for any outstanding warrants that may be pending against the driver. 135 S. Ct. at 1615 (citing *Caballes,* 543

7

U.S. at 408; *Delaware v. Prouse*, 440 U.S. at 658–660 (1979); 4 W. LaFave, *Search and Seizure* § 9.3(c), pp. 507–517 (5th ed. 2012)). The officer did not clearly identify the "jail website," but he admitted that it only provides a "charge record." He said: *"I don't have access to convictions."* He described the police database as "AS-400" and as containing more detailed information than the jail website, but he makes no reference to outstanding warrants. Significantly, the officer *never* says that he used these websites to see if Appellant was wanted on outstanding warrants, and the Commonwealth never argues that the officer spent any time at all checking for outstanding warrants. Nevertheless, we will indulge in the presumption that at least a portion of the officer's time spent on the online sites can be justified as a check for outstanding warrants, although the Commonwealth does not assert as much. Faced with a silent record, we can presume no more.

The trial court acknowledged that Sorrell's justification for delaying the traffic citation to search computer databases was "certainly not overwhelming," but concluded that Appellant's nervousness and sweaty brow at 3:30 a.m. and "blowing smoke in a rather strange way" justified an extension of the stop to conduct the additional investigation on the computer.

Next, the trial court acknowledged that calling in a canine search was "a little bit unusual when you get stopped for no license tag, no valid license tag, and just having no insurance." Nevertheless, the trial court concluded that the fact that Appellant was nervous, sweating, and blowing smoke in the car, and additionally had "charges of carrying a concealed deadly weapon and

8

marijuana," established reasonable and articulable suspicion to justify the prolonged detention of Appellant until the dog could arrive and complete his search.

The Court of Appeals agreed, concluding that after seeing Appellant and getting his driver's license, Sorrell had reasonable and articulable suspicion to return to the cruiser and check for Appellant's name on computer databases because Appellant: 1) was nervous; 2) had sweat on his brow; 3) was blowing cigarette smoke toward the car's interior; and 4) was looking around and over his shoulder.

The Commonwealth agrees that Sorrell extended the traffic stop beyond the time necessary to resolve the traffic violation. The question is whether the officer had a reasonable articulable suspicion of other ongoing illegal activity when he prolonged the stop for the time needed to retrieve the dog and conduct the sniff search. We consider the totality of the circumstances to determine whether a particularized and objective basis existed for suspecting Appellant of illegal activity. *United States v. Cortez*, 449 U.S. 411, 417 (1981).

When assessing the totality of the circumstances relevant to a Fourth Amendment claim, there is a "demand for specificity in the information upon which police action is predicated." *Terry*, 392 U.S. at 22 n.18. We consider the information from which a trained officer makes inferences, such as objective observations and the method of operation of certain kinds of criminals, and whether that information yields a particularized suspicion that the particular individual being stopped is engaged in wrongdoing. *Cortez*, 449 U.S. at 417-

9

418. Due weight is given to specific reasonable inferences. *Terry*, 392 U.S. at 27. Although this "process does not deal with hard certainties, but with probabilities," *Cortez*, 449 U.S at 418, a reasonable suspicion is more than an unparticularized suspicion or hunch, *Terry*, 392 U.S. at 27.

Appellant argues that the circumstances cited by the Commonwealth as justification for prolonging the traffic stop neither individually nor collectively give rise to a reasonable suspicion that he was involved in any criminal activity. He cites *Strange v. Commonwealth*, 269 S.W.3d 847, 851 (Ky. 2008), and *Commonwealth v. Sanders*, 332 S.W.3d 739, 741 (Ky. App. 2011), as analogous cases in which this Court and the Court of Appeals respectively found that the circumstances were insufficient to establish reasonable suspicion of criminal activity. In *Strange*, the suspect stood late at night in a public area known for criminal activity near a public pay phone that had been occasionally used for drug transactions. As officers approached, he walked quickly to a van parked nearby. We rejected the notion that being present in a high crime area at night, near a pay phone, apparently opting to avoid police contact suggested criminal activity. The fact is that many honest, decent, law-abiding citizens live in high-crime areas under similar circumstances and would behave the same way. We held that there was insufficient evidence to justify an investigatory stop and seizure. In *Sanders*, the suspect was a pedestrian out late in a neighborhood known for drug activity. She was seen following someone, and sometime later, she returned to the street walking in the opposite direction and she appeared nervous. The Court of Appeals concluded

10

that these factors did not give rise to reasonable suspicion that the pedestrian was involved in criminal activity.

The Commonwealth concedes that none of the individual factors of Appellant's conduct would arouse a reasonable suspicion, but it argues that taken together each behavior added to the level of suspicion and, in total, created reasonable suspicion. The Commonwealth points to *Adkins v. Commonwealth*, 96 S.W.3d 779, 788 (Ky. 2003), where this Court cited nervousness as an appropriate factor in the reasonable suspicion analysis. To support its argument that Appellant's behaviors of nervousness, glancing over his shoulder, and blowing cigarette smoke create articulable suspicion, the Commonwealth also cites cases from other jurisdictions: *United States v. Mason*, 628 F.3d 123, 129 (4th Cir. 2010) (driver nervous); *United States v. Holt*, 777 F.3d 1234, 1257 (11th Cir. 2015) (driver nervous); *Green v. State*, 256 S.W.3d 456 (Tex. App. 2008) (outside vehicle, driver nervously glanced at it); *United States v. Christian*, 43 F.3d 527, 530 (10th Cir. 1994) (driver had freshly lit cigarette); *State v. Franzen*, 792 N.W.2d 533 (N.D. 2010) (driver had freshly lit cigarette); and *United States v. Neumann*, 183 F.3d 753, 754, 756 (driver had freshly lit cigarette).

Upon review, however, we are satisfied that these cases are not comparable to the one now before us. Unlike *Strange* and *Sanders*, each of the cited cases involved facts beyond the demeanor or behavior of the driver in the vehicle that allowed a rational inference to be made that the driver was

11

engaging in criminal activity.[4] In contrast, Officer Sorrell articulated nothing about Appellant's behaviors, individually or collectively, to connect him to criminal behavior beyond what may be ordinarily expected of a driver stopped for a traffic violation. Heightened nervousness is common among drivers detained by a police officer for a traffic violation. *See United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997). Sweating is a symptom of nervousness in some people. Sorrell saw no indication that Appellant was intoxicated or otherwise impaired. Moreover, he was fully cooperative and coherent. He made no "furtive gestures" to indicate he was trying to hide anything. The Commonwealth hints that blowing smoke into the car's interior could have been an attempt to mask an incriminating odor. However, even the trial court was indifferent to the significance of that conduct. The trial court noted that perhaps Appellant was being "courteous and not blowing smoke in the officer's face. Or was he trying to cover up the smell of marijuana? *Who knows*?" No marijuana or aromatic contraband was found.

---

[4] For example, in *Mason*, the driver did not pull over promptly and during that time spoke with the passenger; the officer encountered the extreme odor of air fresheners; the officer observed only a single key on the driver's ring, who was traveling with a passenger on a known drug route from a source city; the driver and passenger gave conflicting answers about the purpose of their travel; and a newspaper in the backseat contradicted the driver and passenger's stories about where they stayed. In *Holt*, during the 2007 stop, the driver did not answer questions about where he was coming from and going to and the officer recognized the driver from his time working in a narcotics unit; during the 2010 stop, the driver offered only short, vague answers to the officer's questions and the driver and passenger provided inconsistent statements about their recent travel. And in *Green*, the driver had stopped in front of a known drug house, with someone walking from his truck back to the house; the driver had gotten out of and away from his truck when he was pulled over and was walking toward the officer's car, and the driver, glancing nervously at his truck, initially did not comply with the officer's order to return to it.

Simply put, Appellant's behavior during the traffic stop as articulated by the officer on the scene and the prior charge information obtained during the database search do not create a reasonable suspicion that Appellant was then and there engaged in illegal behavior beyond the apparently obvious traffic violations for which he was stopped. The dissent believes we have not considered some circumstances that might be factored into the reasonable suspicion calculation. We examined all the facts relied upon by the officer as the basis for his suspicion, as well as those cited by the trial court as meaningful. The fact that Appellant was permissibly driving someone else's uninsured car does nothing to raise suspicion that criminal activity was afoot or that Appellant was transporting illegal drugs, which was the object of the canine sniff search.

The dissent misconstrues the principle that "criminal history contributes powerfully to the reasonable suspicion calculus." *See United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005). As noted above, the officer claimed only that Appellant had been previously *charged* with carrying a concealed weapon and trafficking in marijuana; he admitted he had no knowledge of any prior convictions. Mere charges do not constitute a "criminal history" upon which one might reasonably suspect future criminal behavior. Even the prosecutor at the suppression hearing, after mentioning Appellant's "criminal history," immediately corrected himself and said that Appellant had a "law enforcement history." The Commonwealth never claims that the officer acted upon knowledge of Appellant's criminal history because the record clearly shows he

13

did not. If Appellant even had a criminal history, it was not part of the "calculus" used to determine reasonable suspicion in this case.

We are satisfied that even with the additional information obtained from the online databases that Appellant had been previously charged with trafficking in marijuana and carrying a concealed deadly weapon, the officer had no reasonable suspicion to believe that Appellant was then and there engaged in criminal activity beyond the traffic offenses for which he was legitimately stopped. It follows that the dog sniff which followed was unreasonable and constitutionally impermissible. Evidence discovered during the subsequent canine search must be suppressed as the product of an unconstitutional seizure and should have been suppressed. *Segura v. United States*, 468 U.S. 796, 804 (1984).

This opinion is not for Rakim Moberly. He has pleaded guilty and has already served out his prison sentence for these crimes. We render this opinion for the untold numbers of innocent Kentucky citizens who have had "criminal charges" and may become nervous and sweaty and look around when confronted by police at a traffic stop at night, and if smoking at the time, would reasonably direct the smoke away from the officer. They have the right to live their lives unfettered by police having no reasonable articulable suspicion to interfere. The Commonwealth's position is tantamount to a rule that says those citizens have no Fourth Amendment protection against unreasonable searches and seizures. We reject that position.

14

## III.  CONCLUSION

For the foregoing reasons, we reverse the Court of Appeals' decision and remand the case to the Fayette Circuit Court for further proceedings consistent with this opinion.

All sitting.  Minton, C.J.; Cunningham, Hughes, Keller, Wright, JJ., concur.  VanMeter, J., dissents by separate opinion.

VANMETER, J., DISSENTING:  I respectfully dissent.  The Court of Appeals correctly concluded that *Rodriguez v. United States*, ___ U.S. ___, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015) does not compel suppression of the evidence seized as a result of the dog sniff.  In *Rodriguez*, the Court held:

> In [*Illinois v.*] *Caballes*, [543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)], however, we cautioned that a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a warning ticket. 543 U.S., at 407, 125 S.Ct. 834.  And we repeated that admonition in *Johnson*: The seizure remains lawful only "so long as [unrelated] inquiries do not measurably extend the duration of the stop." 555 U.S., at 333, 129 S.Ct. 781.  *See also Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) (because unrelated inquiries did not "exten[d] the time [petitioner] was detained[,] ... no additional Fourth Amendment justification ... was required").  An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But contrary to Justice Alito's suggestion, post, at 1625, n. 2, he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.
>
> Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." *Caballes*, 543 U.S., at 408, 125 S.Ct. 834.  Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *See Delaware v. Prouse*, 440 U.S. 648, 658–660, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). *See also* 4 W. LaFave, Search and Seizure § 9.3(c), pp. 507–517 (5th ed. 2012).  These checks serve the same objective as

15

enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. *See Prouse*, 440 U.S., at 658–659, 99 S.Ct. 1391; LaFave, Search and Seizure § 9.3(c), at 516 (A "warrant check makes it possible to determine whether the apparent traffic violator is wanted for one or more previous traffic offenses.").

135 S.Ct. at 1614–15.

In *Rodriguez*, the Court reaffirmed that the "ordinary inquiries incident to the traffic stop" may be validly conducted.[5] Officer Sorrell did precisely that following his initial approach of Moberly in the vehicle. The facts of the stop are (i) vehicle validly stopped for no insurance, (ii) late at night (or early in the morning), (iii) a driver with no proof of ownership, (iv) driving someone else's vehicle under a claim of "permission," (v) extreme nervousness, (vi) visible sweat on brow (during December), (vii) continuous looking to right side of vehicle, and (viii) purposefully blowing smoke into portions of the vehicle.[6]

---

[5] The facts in *Rodriguez* were that the police observed Rodriguez veer onto the shoulder of the highway, in violation of state law. After stopping the vehicle and asking a few questions, the officer obtained the driver's license, registration and proof of insurance, running a record's check on those items. The officer returned to the vehicle, obtained the passenger's driver's license and questioned him. The officer returned to his patrol car and ran a record's check on the passenger. Finally, the officer issued a written warning and returned all documents to the occupants. These record checks took approximately 30 minutes. Only at that point did the officer begin questioning about drugs. The Supreme Court deemed the first portion of the stop, *i.e.*, the officer's three trips to Rodriguez's vehicle and everything in between, including two records checks, of the driver and then of the passenger, to be the "ordinary inquiries incident to the traffic stop." *Rodriguez*, 135 S.Ct. at 1615 (quoting *Caballes*, 543 U.S. at 408, 125 S.Ct. at 834). Neither in the majority opinion in *Rodriguez*, nor in her dissent in *Caballes*, did Justice Ginsburg question the propriety of a police officer asking for license, registration, and insurance, and then checking available records for verification and outstanding warrants. *Id.*; *Caballes*, 543 U.S. at 418, 125 S.Ct. at 843 (Ginsburg, J., dissenting).

[6] The majority compliments Moberly for not blowing smoke in Officer Sorrell's face and instead blowing it towards the interior of the car. However, Moberly had a third alternative: put the cigarette out!

Given just the first four of these, standing alone, Officer Sorrell's checking those databases for information relating to the driver and the vehicle was not only permissible, but failure to do so would have been irresponsible.

"Once the purpose of the initial traffic stop is completed, an officer cannot further detain the vehicle or its occupants ***unless something happened <u>during the stop</u> to cause the officer to have a 'reasonable and articulable suspicion that criminal activity [is] afoot.'"*** *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005) (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)) (emphasis added). Reasonable suspicion is assessed based on the totality of the circumstances and "requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "[W]ithout such reasonable suspicion, all the officer's actions must be 'reasonably related in scope to circumstances justifying the original interference.'" *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) (quoting *Hill*, 195 F.3d at 264).

Although the majority gives lip-service to the totality of the circumstances relevant to the reasonable suspicion calculus, it does not apply it. The majority and the Court of Appeals have focused on four facts related to Moberly's nervousness, sweating, furtive glances and smoking, but in actuality, four other factors were known to Officer Sorrell as well: no proof of insurance, no proof of ownership, late at night (early morning), claim of driving with

17

permission. In my view, the totality of those factors, even without the database search revealing recent drug and gun charges, gave Officer Sorrell reasonable suspicion to call in the canine unit for further investigation.[7]

I would affirm the Fayette Circuit Court's judgment.

COUNSEL FOR APPELLANT:

Brandon Neil Jewell
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

James Daryl Havey
Assistant Attorney General

---

[7] In *United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005), the court stated that "a prior criminal history is by itself insufficient to create reasonable suspicion. . . . Even people with prior convictions retain Fourth Amendment rights; they are not roving targets for warrantless searches. But in conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus." (citation omitted).