RENDERED: OCTOBER 29, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0298-DG

RICKEY ALLEN RHOTON                                  APPELLANT

ON REVIEW FROM COURT OF APPEALS
NO. 2018-CA-0254
BATH CIRCUIT COURT NO. 17-CR-00002

V.

COMMONWEALTH OF KENTUCKY                       APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

Rickey Allen Rhoton entered a conditional guilty plea to charges of first-degree possession of a controlled substance, possession of a controlled substance not in original container, and possession of drug paraphernalia. Rhoton was sentenced to two years' imprisonment, probated for three years. He now appeals the Court of Appeals' affirmation of the Bath Circuit Court's denial of his motion to suppress evidence. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of October 1, 2016, Kentucky State Police Trooper Joseph Zalone was on routine patrol in the Peasticks community of Bath County. Trooper Zalone knew of the area's reputation as a high-crime area for

drug trafficking and illegal possession of narcotics. Trooper Zalone observed a blue Toyota Camry with an unbelted passenger. Trooper Zalone executed a traffic stop of the vehicle which was driven by Rhoton. Trooper Zalone approached Rhoton's window and observed a small, screw-top metal canister, approximately two inches long by one-and-a-half inches wide, in the center console. The canister was of a type that, in Trooper Zalone's experience, was often used to conceal illegal narcotics. Trooper Zalone asked Rhoton if he had any drugs in the car, to which Rhoton responded negatively. Rhoton declined Trooper Zalone's request to search the vehicle.

Trooper Zalone returned to his cruiser with Rhoton's license and registration as well as the passenger's relevant information. Trooper Zalone radioed for assistance from a nearby canine unit as he began preparing the citation. Trooper Zalone testified that it ordinarily took him ten to fifteen minutes to complete a citation for a seatbelt violation. Trooper Zalone ran the ordinary records checks on Rhoton and his passenger, discovering the passenger had an unrelated active arrest warrant. Owingsville Police Officer Bud Lyons and his drug dog arrived 25 minutes after the initial traffic stop and while Trooper Zalone was still in his vehicle preparing Rhoton's citation and confirming information regarding the passenger's warrant. At this point, Officer Lyons assisted Trooper Zalone in removing Rhoton and his passenger from the vehicle.

After removing Rhoton and his passenger from the vehicle, Officer Lyons conducted an external sweep of Rhoton's car, and the dog alerted to the driver's

2

door. Once the door was opened, the dog also alerted to the driver's seat. Trooper Zalone then searched the interior of the automobile in the area the dog alerted and found a partially zipped pouch between the driver's seat and center console. He could see the orange-capped tips of two syringes partially sticking out of the pouch. Upon further inspection of the pouch, Trooper Zalone found additional syringes and plastic wrap containing crushed and melted pills. The metal canister in the console was empty. Rhoton accepted ownership of the bag and admitted that the pills were oxycodone. Rhoton was arrested and subsequently indicted for first-degree possession of a controlled substance, possession of a controlled substance not in original container, and possession of drug paraphernalia.

Rhoton moved the trial court to suppress the evidence seized during the traffic stop arguing that Trooper Zalone impermissibly prolonged the stop to facilitate the dog sniff search. Following an evidentiary hearing, the trial court denied Rhoton's request. The trial court found two rationales for the denial. First, the trial court found that Trooper Zalone's extension of the stop was not excessive given the need to take Rhoton's passenger into custody pursuant to his outstanding warrant. Second, even absent the need to take the passenger into custody, the trial court found that Trooper Zalone's observation of the metal canister taken in conjunction with the stop occurring in a high-drug activity area, provided reasonable articulable suspicion of ongoing criminal activity sufficient to prolong the traffic stop. The Court of Appeals affirmed the trial court. Rhoton filed a motion for discretionary review which we granted.

3

## II.    STANDARD OF REVIEW

Kentucky Rule of Criminal Procedure ("RCr") 8.27 governs motions to suppress evidence and requires the trial court to "state its essential findings on the record."[1] A trial court's denial of a motion to suppress is reviewed under a two-prong test. First, we review the trial court's findings of fact under the clearly erroneous standard.[2] Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence.[3] Second, we review de novo the trial court's application of the law to the facts.[4] In the current case, the facts are largely undisputed, and the issue turns on the second prong of the suppression test: did the trial court and Court of Appeals properly apply the facts to the law?

## III.    ANALYSIS

Rhoton moved to suppress the incriminating evidence discovered in his vehicle, as well as his subsequent admissions, on the basis that the evidence was the fruit of an illegal search that occurred after the lawful traffic stop was unlawfully extended. "It has long been considered reasonable for an officer to conduct a traffic stop if he or she has probable cause to believe that a traffic

---

[1] RCr 8.27(5), RCr 8.20(2); *see also* Kentucky Rule of Civil Procedure 52.01.

[2] A factual finding is not clearly erroneous if it is supported by substantial evidence, that is, "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted).

[3] *Davis v. Commonwealth*, 484 S.W.3d 288, 290 (Ky. 2016) (citing *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015)).

[4] *Turley v. Commonwealth*, 399 S.W.3d 412, 417 (Ky. 2013).

4

violation has occurred."[5] Furthermore, an officer's subjective motivations for the stop are not relevant, "[a]s long as an officer 'has probable cause to believe a civil traffic violation has occurred[.]'"[6] While officers may detain a vehicle and its occupants to conduct an ordinary stop, such actions may not be excessively intrusive and must be reasonably related to the circumstances justifying the initial seizure.[7] The United States Supreme Court in *Rodriguez v. United States* said that even a *de minimis* delay beyond the time needed to pursue the original purpose of the stop fails a constitutional test absent other circumstances.[8]

An officer's ordinary inquiries incident to a traffic stop do not impermissibly extend such stop.[9] Included in such ordinary inquiries are an officer's review of the driver's information, auto insurance and registration, and the performance of criminal background checks of the driver and any passengers.[10] In order to extend the stop beyond that required to complete its initial purpose, something must occur during the stop to create a "reasonable and articulable suspicion that criminal activity is afoot."[11]

---

[5] *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013) (citing *Wilson v. Commonwealth*, 37 S.W.3d 745 (Ky. 2001)).

[6] *Id.* (quoting *Wilson*, 37 S.W.3d at 749); *see also Davis*, 484 S.W.3d at 291.

[7] *Davis*, 484 S.W.3d at 292 (citing *Turley*, 399 S.W.3d at 421).

[8] 575 U.S. 348, 356-57 (2015).

[9] *See Rodriguez*, 575 U.S. at 355; *Davis*, 484 S.W.3d at 293.

[10] *Carlisle v. Commonwealth*, 601 S.W.3d 168, 176, 179 (Ky. 2020).

[11] *Turley*, 399 S.W.3d at 421 (citing *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005) (internal quotes omitted); *see also Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket

Our two most recent cases applying *Rodriguez* are *Commonwealth v. Smith*[12] and *Carlisle v. Commonwealth*.[13] In *Carlisle*, rendered earlier this year, we affirmed the trial court's denial of a motion to suppress.[14] Rodney Carlisle was the passenger in a truck driven by Christopher Hughes that was stopped by officers for improper equipment.[15] Officers took Hughes's and Carlisle's identification and, upon doing a check, found Hughes's driver's license was suspended and that both had prior convictions for drug or gun charges.[16] Officers told Hughes and Carlisle there would be no citation issued, but Hughes had to park the truck and leave it at a nearby gas station.[17] Officers then requested, and received, permission to search the truck.[18] During the search, they found a backpack, apparently belonging to Carlisle, containing items associated with the drug trade including unused syringes, multiple cell phones, and butane.[19] The discoveries led officers to believe that any drugs

---

to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.")

[12] 542 S.W.3d 276 (Ky. 2018).

[13] 601 S.W.3d 168.

[14] *Id.* at 171.

[15] *Id.*

[16] *Id.* at 172.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 173.

were likely on Hughes's or Carlisle's persons.[20] A search of Carlisle's person resulted in the discovery of marijuana and methamphetamine.[21]

Carlisle, in his motion to suppress, argued that officers illegally extended the traffic stop beyond its original purpose and that their continued detention of Carlisle after the conclusion of the traffic stop was an illegal seizure.[22] We stated that the stop had not concluded; rather, officers had reason to maintain control of the scene to ensure that Hughes did not continue to drive the vehicle with faulty equipment and a suspended license.[23] We further said that it was uncontroverted that running a check for outstanding warrants is a routine task associated with a proper stop.[24] Importantly, we then held that an officer may ask for identification and perform criminal records checks of the driver and any passengers during a lawful traffic stop as an ordinary measure related to officer safety.[25] Relying on the logic from *Pennsylvania v. Mimms*[26] and *Maryland v.*

---

[20] *Id.*

[21] *Id.*

[22] *Id.* at 174.

[23] *Id.* at 176.

[24] *Id.* at 177 (citing *Moberly v. Commonwealth*, 551 S.W.3d 26, 30 (Ky. 2018)); *see also Rodriguez*, 575 U.S. at 355; *Davis*, 484 S.W.3d at 293.

[25] *Id.* at 179; *see also State v. Allen*, 779 S.E.2d 248 257 (Ga. 2015).

[26] 434 U.S. 106 (1977) (ordering the driver out of a vehicle during a traffic stop is permissible in the interest of officer safety and not an arbitrary interference with the individual's rights).

7

*Wilson,*[27] we held that officers may detain passengers for the entire duration of the stop, including warrant and background checks, as a safety measure.[28]

In *Smith,* police detectives were surveilling Smith based on an informant's tip that Smith was trafficking cocaine.[29] During this surveillance, detectives did not observe any of the typical indications of drug activity by Smith.[30] One evening, a detective observed Smith "interact[ing] with another resident of his apartment building" at a gas station and followed Smith home.[31] At some point during the drive, Smith failed to use a turn signal.[32] The detective called in a prepositioned canine unit to initiate a stop.[33] The canine officer found Smith to be cooperative, but nervous.[34] The officer then led his dog on a sniff search of Smith's car resulting in the discovery of seven grams of cocaine.[35] The entire incident from stop to arrest was eight minutes.[36] The trial court found the use of the dog impermissibly extended the stop, as the "search

---

[27] 519 U.S. 408 (1997) (extending *Mimms* to permit ordering of passengers out of a stopped car).

[28] *Carlisle,* 601 S.W.3d at 181.

[29] *Smith*, 542 S.W.3d at 278.

[30] *Id.* at 283-84.

[31] *Id.* at 278-79.

[32] *Id.* at 279.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

exceeded what was reasonably necessary to achieve the purpose of the traffic stop."[37] The Court of Appeals affirmed the trial court.[38]

In *Smith,* we said that the canine officer's interactions with Smith were inconsistent with the reason for the stop.[39] In fact, the officer conducted a dog sniff search **instead of** completing the ordinary elements of the stop.[40] We stated:

> [t]he legitimate purpose of the traffic stop...was to cite [Smith] for making an improper turn.... [I]nstead of diligently pursuing the purpose of the traffic stop, [the officer] seemingly abandoned the legitimate purpose of issuing a traffic citation because he immediately asked [Smith] about drugs and launched the dog's sniff search.[41]

The officer in Smith failed to diligently pursue the traffic violation, abandoning that mission for the drug sniff search of Smith's vehicle.[42] Prior to the stop, officers lacked a reasonable, articulable suspicion to justify the stop of Smith's car for anything other than the traffic violation, and nothing in the traffic violation or his interaction with the officer during the stop changed this fact.[43] For that reason, we held that the sniff search of Smith's car was an

---

[37] *Id.*

[38] *Id.* at 280.

[39] *Id.* at 284.

[40] *Id.* at 281.

[41] *Id.* at 281-82.

[42] *Id.* at 282.

[43] *Id.* at 283-84.

impermissible extension of the stop and affirmed the lower courts' suppression of the evidence.[44]

In the present case, Rhoton was stopped for the failure of his passenger to use a seatbelt. As part of the stop, Trooper Zalone asked for identification from both Rhoton and the passenger from which he ran an ordinary outstanding warrants search. A warrants search resulted in a notification of an outstanding arrest warrant for Rhoton's passenger, necessitating actions on Trooper Zalone's part to execute the warrant. The total encounter was twenty-five minutes, approximately ten minutes longer than Trooper Zalone's estimate of what an ordinary stop for a seatbelt violation would take. Rhoton avers that this ten-minute addition was an impermissible delay and should result in the suppression of the evidence found during this period. We disagree.

It is true that Trooper Zalone stated an ordinary stop for a seatbelt takes ten to fifteen minutes, but this was not an ordinary stop. The routine warrants check, permitted under *Rodriguez* and our own precedents, returned an outstanding warrant for Rhoton's passenger. This new fact provided independent probable cause to extend the stop for an amount of time reasonably necessary to address the outstanding warrant.[45] It would be inconsistent for the law to allow the routine check for outstanding warrants,

---

[44] *Id.* at 280.

[45] *See United States v. Offord*, 788 Fed Appx. 384 (7th Cir. 2019) (holding the stop was not impermissibly delayed by officer's actions to address passenger's outstanding warrant); *see also Bolin v. Commonwealth*, 592 S.W.3d 305, 314 (Ky. App. 2019) (holding the stop was not improperly delayed where stop had already morphed into an arrest).

yet not allow the officer the time or space to act when such a warrant is discovered. Furthermore, unlike the officer in *Smith*, Trooper Zalone did not entirely abandon the purpose of the initial stop and had an independent reason to maintain control of the scene given his new information.

Rhoton goes on to argue, even if the outstanding warrant was new information that Trooper Zalone was privileged to act upon, he could have done so in a way that permitted Rhoton to go on his way prior to the canine unit's arrival. Perhaps Trooper Zalone could have proceeded in such a manner, but as we stated in *Carlisle,* officers have an interest in securing those at the scene until the stop is complete.[46] While *Carlisle* applied to passengers at the scene, the same logic applies to the driver when the passenger has now become the subject of the stop. We therefore hold that discovery of an outstanding warrant as part of a traffic stop provides new probable cause for the resulting increased duration of such stop. We further hold that such increase does not impermissibly delay the individuals subjected to the stop, and, in the interest of officer safety, all those involved in the stop may be detained until the stop is complete. We reiterate, however, that this new purpose of the stop must be diligently pursued, and any prolonging of the stop must be related to this new purpose. Accordingly, we affirm the Court of Appeals and the Bath Circuit Court regarding Rhoton's motion to suppress.

---

[46] 601 S.W.3d at 181; *see also U.S. v. Sowers*, 136 F.3d 24 (1st Cir. 1998) (holding it was not an impermissible de facto arrest to detain driver while officer talked to passenger).

Because we hold today that the tasks associated with the arrest of Rhoton's passenger provided an independent justification to seize Rhoton and his vehicle and that discovery of the warrant was related to the initial stop, we do not need to, and decline to, address whether Trooper Zalone's observations of the metal canister and location of the stop provided a separate, independent justification to extend the stop.

## IV.   CONCLUSION

We hold that actions taken to facilitate the arrest of Rhoton's passenger did not impermissibly extended his traffic stop. Therefore, his motion to suppress the evidence resulting from the subsequent use of the narcotics dog was correctly denied. For the reasons stated above, we affirm the Court of Appeals and the Bath Circuit Court on this issue.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

James Daryl Havey
Assistant Attorney General